UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| PEARL 53 LLC, | Case No. 20ɓ419116ɓCEC |
| Debtor. | |

-------------------------------------------------------------x

| | |
|---|---|
| PEARL 53 LLC, | Adversary Proceeding No. 20–_____ –CEC |
| Plaintiff, | |
| – against – | |
| 177 WATER LP, | |
| Defendant. | |

-------------------------------------------------------------x

## ADVERSARY COMPLAINT

The Debtor/Plaintiff herein, PEARL 53 LLC (the ōDebtorö), by its attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for its Complaint against the defendant, 177 WATER LP (the ōSelleró), alleges as follows:

## PRELIMINARY STATEMENT

1.    The Debtor, which sought Chapter 11 relief in the midst of the Covid-19 crisis, is bringing this Adversary Proceeding to obtain a determination invalidating Sellerø wrongful efforts to terminate the Debtorø rights under a certain Contract of Sale, dated December 27, 2017, as amended (the ōSale Contractö). The Sale Contract relates to the Debtorø intended acquisition of a residential building at 53 Pearl Street, Brooklyn, New York (the ōBuildingö).

2.    Of critical importance to the Debtor, the Sale Contract was signed with a view of acquiring the Building for redevelopment purposes, vacant of all tenants. Accordingly, the Sale Contract contains a number of representations requiring the Seller to lawfully terminate all

existing residential leases and deliver the Building to the Debtor at closing, free of any person with rights of possession, use, or occupancy or any other rights with respect to the Building.

3.      Fundamentally, the transaction centered upon the Seller's express representations that at the time of closing all residential units were lawfully vacated in compliance with the New York City Loft Law ("Loft Law") and Interim Multiple Dwellings ("IMD") rules and regulations.

4.      In reality, the Seller took several questionable steps in vacating the tenants. As a result, many former tenants retain potential claims against the Building due to the Seller's non-compliance with Loft Law and IMD requirements.

5.      The Seller's inability to establish full compliance with the Loft Law and IMD requirements not only diminishes the Sale Contract's overall value, but constitutes a material breach thereof. Thus, any effort by the Seller to terminate the Sale Contract is a nullity.

6.      The Debtor commenced this Chapter 11 case to preserve all of its rights and remedies against the Seller for breach of the Sale Contract. The Debtor has now coupled the Chapter 11 filing with commencement of this Adversary Proceeding seeking, *inter alia,* (i) a Declaratory Judgment finding and declaring that the Seller has no valid grounds to terminate the Sale Contract and (ii) recognizing Seller's breach of the Sale Contract and Debtor's right to obtain reimbursement of the contract deposit and other damages or specific performance with an abatement in the purchase price based upon the Second Amendment defined below.

## JURISDICTION AND VENUE

7.      This Court has the requisite constitutional authority to enter a judgment by virtue of 28 U.S.C. §§ 157 (a) and (b), 1334 (a) and (b).   Alternatively, the Debtor confirms its consent

to entry of a final order or judgment by the Bankruptcy Court if it is determined that the Bankruptcy Court cannot enter final orders or judgements consistent with the U.S. Constitution.

8.      This adversary proceeding constitutes a "core" proceeding within the meaning of 28 U.S.C. 157(b)(2)(A), (B), (E), (M), (N) and (O) in that the Complaint seeks a declaration of property rights belonging to the Debtor's estate for purposes of Section 541 of the Bankruptcy Code; affects the administration of the Debtor's estate; relates to allowance or disallowances of potential claims in bankruptcy; and otherwise involves the potential acquisition of real property by the Debtor.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1409(a) as the situs of the Property.

## THE PARTIES

10.     On April 28, 2020, the Debtor filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code, and thereafter has continued in possession of its property as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

11.     Upon information and belief, the Defendant, 177 WATER LP, is a foreign limited partnership organized under the laws of the State of Delaware, which owns the Building in Brooklyn, New York.

## BACKGROUND FACTS

12.     The underlying sale transaction has been pending for several years while the Seller endeavored to terminate tenant leases and vacate the Building. The Sale Contract itself dates back to late 2017 when the Debtor was organized to pursue the intended acquisition.

13.     Under the Sale Contract, the Debtor originally agreed to purchase the Building for a purchase price of $11,600,000, including an initial deposit of $850,000 (the "Deposit").

14.     During the subsequent years, the Sale Contract was amended to provide liquidity to the Seller to effectuate tenant buy-outs. Moreover, pursuant to the amendments, the purchase price was reduced to the current sum of $9,850,000 and the Deposit was increased to $928,000.

15.     The property itself is comprised of a relatively older residential apartment building in Downtown Brooklyn. The key aspect of the redevelopment project required the Defendant to deliver the Building free of existing tenants and properly deregulated.

16.     To this end, the Sale Contract contains a number of express representations (collectively, the "Tenant Representations"):

> (a) Pursuant to paragraph 1(f) of the rider to the Sale Contract, "there will be no persons … with any right of possession, use, occupancy or any other right with respect to the [Building]";
>
> (b) Pursuant to paragraph 1(m) of the rider to the Sale Contract, Seller represented that "as of the closing, there will not be any persons or entities entitled to assert any right to use, occupancy or possession (sic) based upon the fact the premises are subject to IMD or are subject to any loft board control or jurisdiction, rent stabilization, rent control or other rent regulation"; and
>
> (c) Paragraph 2(h) of the rider to the Sale Contract states that all units "have been legally permanently vacated."

17.     These provisions lie at the heart of this adversary proceeding since the Seller has not abided by the Tenant Representations.

**DEFICIENCIES REGARDING SELLER'S DEREGULATION OF THE BUILDING**

18.     In entering into the Sale Contract, the Seller was well aware that the Debtor intended to redevelop the Building as either a residential apartment building or a residential condominium. To accomplish this, the Building had to be delivered vacant.

19.     Following execution of the Sale Contract, Debtor made a number of concessions to help facilitate the Seller's ability to terminate leases and deliver the Building vacant, including the Debtor's agreement under the first amendment to release the Deposit.

20.     Additionally, under the second amendment, the Debtor paid certain debt service obligations for the Building.

21.     The Debtor agreed to these concessions in reliance on the continuing validity of the Seller's representations regarding strict compliance with the Loft Law and IMD regulations.

22.     In the period leading-up to a scheduled closing in March 2020, the Debtor's consultant reviewed all of the Seller's Loft Law filings and concluded that there were a number of deficiencies concerning the manner in which various apartment units were vacated (collectively, the "Loft Law Irregularities").

23.     While the Loft Law Irregularities involve technical aspects of the Loft Law and IMD regulations, they nevertheless pose significant potential liability and vitiate the Seller's representations regarding the tenants and leases as highlighted below:

| Apartment # | Deficiencies |
|---|---|
| 4R / 5R | These units were not registered with IMD even though they may have been used for residential purposes during prior window periods (i.e., 4/1/1980 – 12/1/1981; 1/1/2008 – 12/31/2008; and 1/1/2015 – 12/31/2016). The Seller has provided no proof that these units were used only for commercial purposes during these window periods. Under current amendments, there is no longer any deadline or statute of limitations relating to coverage related claims by former tenants. Thus potential claims exist regarding prior residential use which can only be remedied by presenting clear proof that the units were always used for commercial purposes with appropriates lists of all prior tenants since January 1, 2008. |
| 4F | The unit has an agreement whereby the prior tenants withdrew their coverage application in part because of receiving $90,000 from Seller. In the process, it was represented to the prior tenants and the Loft Board that the unit already had a buyout of rights and fixtures from an earlier tenant. The purported agreement with the earlier tenant is not filed with the Loft Board. The current agreement with the prior tenants was not filed with the Loft Board, just the |

| | |
|---|---|
| | withdrawal of their application. Without a copy of the buyout agreement from the earlier tenant, anyone can file another application for coverage. |
| 3R | The unit has buyout consideration that appears to be low and can be perceived by the Loft Board as not constituting a bona fide transaction sufficient to qualify for deregulation. |
| 3F | The surrender agreement for this unit was not signed the tenant, Ben Gilmartin, and only was signed by Todd Horowitz and Annbritt Newey. The unit has buyout consideration that also appears very low and can be perceived by the Loft Board as not constituting a bona fide transaction sufficient to qualify for deregulation. |
| 2R | The buyout with respect to this unit requires additional scrutiny due to the absence of a copy of the lease from the prior tenant and a rent ledger showing all prior rental payments. |
| 2F | The unit was not registered as an IMD and the surrender agreement was not filed with the Loft Board. Additionally, the surrender agreement itself was only signed by the owner. The unit, likewise, has buyout consideration that appears very low and can be perceived by the Loft Board as not constituting a bona fide transaction eligible for deregulation. |

## FIRST CLAIM FOR RELIEF
### *(Declaratory Judgment)*

24.    The Debtor repeats the allegations in paragraphs "1" through "23" as though more fully set forth herein.

25.    Following the second amendment, the Debtor made known its growing concern regarding the Seller's compliance with the Loft Law and IMD regulations.

26.    The Debtor informed the Seller of the Loft Law Irregularities. The Seller ignored the Loft Law Irregularities and took no effort to remedy the same.

27.    Instead, Seller attempted to terminate the Debtor's rights with respect to the Sale Contract pursuant to letter dated March 10, 2020.

28.    On March 25, 2020, the Debtor rejected any effort by the Seller to declare the Sale Contract terminated and instead declared the Seller in breach thereof, pointing to multiple violations of the Tenant Representations and other deficiencies.

6

29.     In view of these divergent positions, there is a justiciable dispute and controversy as to whether the Sale Contract remains in effect, as well as whether the Seller is guilty of a breach thereof based upon violations of the Tenant Representations and other deficiencies cited in the Debtor's March 25, 2020 rejection letter.

30.     In view of the foregoing, the Debtor is entitled to a declaratory judgment finding, among other things, that (i) Seller did not have a valid basis to terminate the Sale Contract; and (ii) that the Seller (not the Debtor) breached and violated the Sale Contract, negating the March 10, 2020 termination letter.

## SECOND CLAIM FOR RELIEF
### (*Breach of Contract*)

31.     Debtor repeats the allegations in paragraphs "1" through "30" as though more fully set forth herein.

32.     That at all times relevant hereto, the Sale Contract remains a valid, binding and enforceable agreement against the Seller.

33.     Therefore, by reasons of its failure to remediate the Loft Law Irregularities, the Seller breached the Tenant Representations set forth in the Sale Contract.

34.     Pursuant to paragraph 29(b)(i) of the Sale Contract, upon the Seller's default one of the Debtor's remedies is to obtain reimbursement of the Deposit together with accrued interest plus all related damages.

35.     In view of the foregoing, the Debtor is entitled to a judgment against Seller in the total amount of $1,583,330.34 together with accrued interest, representing (i) return of the Deposit of $928,000; (ii) all architect, consultant, contractor and attorneys' fees paid in connection with the anticipated acquisition of the Building; and (iii) reimbursement of all carrying costs paid to Seller.

### THIRD CLAIM FOR RELIEF
*(Specific Performance with Abatement of the Purchase*
*Price Based Upon Recession of Second Amendment)*

36.     Debtor repeats the allegations in paragraphs "1" through "35" as though more fully set forth herein.

37.     That in or about October 31, 2019, the Debtor was induced to enter into the Second Amendment to Contract of Sale (the "Second Amendment") based upon the Seller's reaffirmation that it had and will continue to comply with all the Tenant Representations and was on track to deliver the Building properly vacated and lawfully deregulated.

38.     That in reliance on these continuing representations, the Debtor increased the Deposit and provided other financial accommodations to the Seller.

39.     That the Tenant Representations have proven false in view of the Loft Law Irregularities.

40.     Indeed, the Seller's continuing representations that the Building was lawfully deregulated pursuant to Loft Law and IMD regulations are false and were knowingly false when reaffirmed to induce execution of the Second Amendment.

41.     In view of the fraudulent inducement and misrepresentations, the Second Amendment is subject to rescission and its terms do not properly preclude the Debtor's right to seek specific performance of the Sale Contract in accordance with the terms of the original agreement signed in late 2017.

42.     Based upon the Loft Law Irregularities, the Building is subject to extensive liability which was not within the contemplation of Debtor in entering into the Sale Contract. In turn, even the reduced purchase price which the Debtor agreed to pay Seller for the purchase of the Building is no longer reflective of the diminished value of the Building.

43.     Based upon the rescission of the Second Amendment, the Debtor may seek to compel the Seller's performance under the Sale Contract as an alternative remedy.

44.     In view of the foregoing, the Debtor is entitled to judgment directing Seller's specific performance of the Sale Contract with an abatement of the purchase price to reflect the diminished value of the Building as a result of the Loft Law Irregularities and the resulting potential damages and exposure.

**WHEREFORE**, the Debtor demands a judgment against the Seller 177 WATER LP consistent with the foregoing, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May11, 2020

                                     GOLDBERG WEPRIN
                                     FINKEL GOLDSTEIN LLP
                                     *Attorneys for Debtor/Plaintiff*
                                     1501 Broadway, 22nd Floor
                                     New York, New York 10036
                                     (212) 221-5700

                                     By:     /s/Kevin J. Nash, Esq.